UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC HILAIRE SAINT-ULYSSE,<br><br>    Plaintiff,<br><br>    v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.; RICHARD GEORGE; and HOPE MERRY,<br><br>    Defendants. | Civ. No. 21-14677 (KM) (JSA)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

*Pro se* plaintiff Marc Hilaire Saint-Ulysse filed this civil action against Great Lakes Educational Loan Services, Inc. ("Great Lakes") and two individuals previously affiliated with the company, Richard George and Hope Merry, asserting breach of contract and various other claims pertaining to student loans that were serviced by Great Lakes.

Now before the Court are (a) the motion of Great Lakes to dismiss Saint-Ulysse's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and (b) Saint-Ulysse's motion for default judgment against the individual defendants pursuant to Fed. R. Civ. P. 55(b)(2). For the reasons expressed below, Great Lakes' motion to dismiss is **GRANTED**, and Saint-Ulysse's motion for default judgment is **DENIED**.

**I.    BACKGROUND**[1]

Saint-Ulysse initiated this action on August 6, 2021 using a form complaint titled "Complaint for a Civil Case Alleging Breach of Contract." (DE

---

[1]     Certain citations to record are abbreviated as follows:

        "DE" = Docket entry number in this case

        "Compl." = Saint-Ulsse's Complaint for a Civil Case Alleging Brach of Contract (DE 1)

1.) In a handwritten statement regarding an apparent "billing error dispute," Saint-Ulysse alleged the following:

> The plaintiff, Marc H. Saint-Ulysse paid money in the form of a promissory note. Through lack of disclosures the plaintiff's promissory note was tendered for value. Under the agreement, the defendant, Great Lakes Educational Loan Services, Inc., was supposed to be the creditor in this alleged loan security instrument. The defendant failed to comply by showing true double entry accounting debits of the loss as a result of the issuance of the alleged loan to plaintiff, not providing the original wet ink signature of the promissory note, and prove they are the rightful holder of due course of my promissory note of this alleged loan. Perfection of a security interest is actual possession. If they are not in physical possession of the promissory note, they have no real claim to an alleged debt without the original note present for inspection.

(DE 1 at 8.) In connection with this statement, Saint-Ulysse supplemented his apparent breach of contract claim with the following six "causes of action": 1) "dishonor in commerce," 2) "collusion," 3) "theft of funds," 4) "racketeering," 5) "failure to state a claim upon relief," and 6) "emotional distress." (*Id.* at 5.) On November 2, 2021, Great Lakes moved for the Court to dismiss Saint-Ulysse's complaint or alternatively direct Saint-Ulysse to file a more definitive statement of his complaint. (DE 12.) On November 5, 2021, Saint-Ulysse filed an opposition to Great Lakes' motion. (DE 13.) On November 29, 2021, Saint-Ulysse filed a short supplemental submission. (DE 18.) On March 29, 2022, the Court granted Great Lakes' motion as to the alternative relief sought and ordered Saint-Ulysse to file a more definitive statement of the Complaint by April 19, 2022. (DE 29.)

---

"Statement" = Saint-Ulysse's "More Definitive Statement" (DE 38)

"Mot." = Great Lakes' Brief in Support of Great Lakes Educational Loan Services, Inc.'s Motion to Dismiss Plaintiff's More Definitive Statement of the Complaint (DE 40)

On April 19, 2022, Saint-Ulysse submitted a letter to the Court setting forth a "More Definitive Statement for [his] Complaint Alleging Breach of Contract." (DE 38.) In his "More Definitive Statement," Saint-Ulysse alleges that he previously notified Great Lakes of a billing error with respect to his Great Lakes student loan account, making reference to a document appended to his original complaint titled "Verified Student Loan Holder Billing Error Dispute." (Statement ¶ 3, 8.) Saint-Ulysse further alleges that he raised this dispute because "there was a possible violation of General[ly] Accepted Accounting Principles" ("GAAP") on the part of Great Lakes.[2] (Statement ¶ 9.) According to Saint-Ulysse, Great Lakes violated GAAP by "refusing to credit his account because it should reflect a bank asset and liability . . . not a debt," and Great Lakes "failed to comply by showing true double entry accounting debits of the loss as a result of the issuance of the alleged loan to plaintiff . . ." (*Id.*; Compl. at 8.) This alleged violation of GAAP also appears to involve Saint-Ulysse's understanding that Great Lakes, not the federal government, was going to serve as the creditor providing the funds for his student loans, and his allegation that Great Lakes tendered his promissory note for value (as evidenced, according to Saint-Ulysse, by Great Lakes' failure to present him with a wet ink signature of the note for inspection). (Statement ¶¶ 4, 5, 6, 16, 17, 21.) In his "More Definitive Statement," Saint-Ulysse alleges two additional causes of action that were not enumerated in his original complaint: 1) breach of fiduciary duties, and 2) "contract fraud." (*Id.* ¶¶ 19, 27.) On May 10, 2022, Great Lakes moved to dismiss Saint-Ulysse's "More Definitive Statement" of the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[3] (DE

---

[2]   This seems to be what Saint-Ulysses was referring to in his original complaint when he stated that Great Lakes "failed to comply by showing true double entry accounting debits of the loss as a result of the issuance of the alleged loan to plaintiff." (Compl. at 8.)

[3]   Great Lakes also moves to dismiss Saint-Ulysse's complaint for failure to not set forth a "short and plain statement of [his] claim showing that [he] is entitled to relief." (Mot. 9-10 (citing Fed. R. Civ. P. 8(a).) I decline to dismiss Saint-Ulysse's complaint on those pleading grounds. In light of Saint-Ulysse's *pro se* status, I will construe his

40.) Saint-Ulysse has not specifically opposed or otherwise responded to that most recent motion by Great Lakes, but I will consider all of his submissions as constituting his opposition to Great Lakes' motion(s) to dismiss his complaint as supplemented by the more definite statement.

Also pending before the Court is Saint-Ulysse's motion for default judgment against individual defendants Richard George and Hope Merry pursuant to Fed. R. Civ. P. 55(b)(2). (DE 47.) On May 3, 2022, the Clerk entered default as to the individual defendants for failure to respond or otherwise defend, and on July 20, 2022, Saint-Ulysse filed the present motion. The individual defendants have still not made an appearance in the case.

In the following discussion, I first consider Great Lakes' motion to dismiss,[4] and then address Saint-Ulysse's motion for default judgment as to the individual defendants.

## II.   MOTION TO DISMISS[5]

Great Lakes moves to dismiss Saint-Ulysse's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. at 13.) Great Lakes

---

complaint liberally and determine whether any combination of allegations he has advanced thus far successfully states a claim for relief. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1979) (holding that *pro se* pleadings are "held to 'less stringent standards than formal pleadings drafted by lawyers'").

[4]     For the purpose of deciding Great Lakes' motion to dismiss, I will construe Saint-Ulysse's operative complaint as consisting of both his original form complaint as well as his "More Definitive Statement."

[5]     When he initiated this action, Saint-Ulysse purported to invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332, as he alleged that the parties were completely diverse (Saint-Ulysse, a New Jersey resident, alleges Great Lakes and the individual defendants are citizens of Wisconsin for the purpose of determining diversity jurisdiction) and the amount in controversy, $5 million, exceeds the jurisdictional threshold of $75,000. (Compl. at 1, 3, 5, 8.) Accepting Saint-Ulysse's complaint at face value would suggest that this Court does have subject matter jurisdiction under § 1332. However, I note that given the individual defendants' lack of involvement in the case, the Court has no evidence that Richard George and Hope Merry are not New Jersey citizens. Nevertheless, as I discuss in Section II.H., *infra*, I also construe Saint-Ulysse's racketeering claim as being brought under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), if not under the New

4

contends that Saint-Ulysse has not pleaded sufficient facts to set out a plausible claim with respect to any of the causes of action he alleges. I construe Saint-Ulysse's complaint to assert the following eight claims: 1) breach of contract, 2) fraud in the inducement, 3) breach of fiduciary duties, 4) conversion, 5) wrongful dishonor, 6) civil conspiracy, 7) racketeering, and 8) intentional infliction of emotional distress.[6] Because Saint-Ulysse has indeed failed to state a claim upon which relief can be granted with respect to any of these causes of action. I will therefore grant Great Lakes' motion and dismiss Saint-Ulysse's complaint.

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

---

Jersey Racketeering Act as well. Thus the court would still have federal question jurisdiction over Saint-Ulysse's federal claim under § 1331, allowing me to exercise supplemental jurisdiction over the remaining state claims under § 1367.

[6]     Saint-Ulysse appears to separately assert that Great Lakes and the individual defendants "fail[ed] to state a claim upon relief." (Compl. at 5.) This does not set forth any cognizable cause of action. Indeed, it is ordinarily asserted not by a plaintiff against a defendant, but by a defendant against a plaintiff, as grounds for dismissing a complaint under Fed. R. Civ. P. 12(b)(6). To the extent Saint-Ulysse asserts this as a standalone claim, it must be dismissed.

**B. Breach of Contract**

Central to this action is Saint-Ulysse's breach of contract claim. (Statement ¶ 1 ("This is an action to recover damages resulting from Defendants' Breach of Contract.").) However, Saint-Ulysse does not plead facts sufficient to support such a claim.

To establish a breach of contract claim, a claimant must show (1) "that the parties entered into a valid contract"; (2) "that the defendant failed to perform [its] obligations under the contract"; and (3) "that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J.Super. 245, 920 A.2d 678, 689 (App. Div. 2007).[7] "A contract exists when there was a meeting of the minds, there was an offer and acceptance, there was consideration, and there was certainty in the terms of the agreement." *See Allen-White v. Bloomingdale's, Inc.*, 225 F. Supp. 3d 254, 258 (D.N.J. 2016). A meeting of the minds "occurs when there has been a common understanding and mutual

---

[7] "[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir.2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). New Jersey uses the most-significant-relationship test, which consists of two prongs. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F.Supp.2d 696, 704 (D.N.J.2011), *aff'd*, 709 F.3d 202 (3d Cir.2013). First, the court must determine whether a conflict actually exists between the potentially applicable laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008) ("Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them.") (internal quotations omitted). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 717 (D.N.J. 2011) (quoting *P.V.*, 197 N.J. at 143). If a conflict exists, the court then moves to the second prong: it must determine "which state has the 'most significant relationship' to the claim at issue by weighing the factors" in the applicable section of the Restatement (Second) of Conflict of Laws. *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102 (1993). The parties seem to agree that New Jersey law governs the state-law claims in this action. At any rate, they point to no aspect in which the application of non-forum law would change the result. Having been directed to no applicable conflict, I apply general principles of New Jersey contract law.

assent of all the terms of a contract." *See Knight v. New Eng. Mut. Life Ins. Co.*, 220 N.J. Super. 560 (App. Div. 1987).

Saint-Ulysse has not pleaded any of the required elements of a breach of contract claim. He claims that Great Lakes was a creditor in a loan agreement into which he entered, but has not provided the Court with a copy of the underlying agreement or specified any of the purported agreement's terms.[8] Without presenting a copy of the subject contract or elaborating as to its terms, Saint-Ulysse is unable to plausibly allege how Great Lakes failed to perform one or more of its obligations thereunder.[9]

Without providing any terms of an agreement or any reasonable explanation of how those terms were violated and how such violation caused him damage, Saint-Ulysse's breach of contract claim must fail.

Saint-Ulysse's claim for breach of contract will be dismissed.

### C. "Contract Fraud"

Saint-Ulysse alleges informally that Great Lakes engaged in "contract fraud." (Statement ¶ 27.) I find that the most analogous cause of action under New Jersey law is fraud in the inducement, and I will construe Saint-Ulysse's complaint to assert such a claim. However, given a lack factual support, the claim fails.

---

[8]  Great Lakes is not itself a lender, but is a student loan servicing company. *See, e.g., Lawson-Ross v. Great Lakes Higher Education Corporation*, 955 F.3d 908, 914 (11th Cir. 2020) ("As a federal student loan servicer, Great Lakes was responsible for collecting payments from borrowers, providing borrowers with repayment options, managing borrowers' student loan accounts, and communicating with borrowers about their loans"); *Nelson v. Great Lakes Educational Loan Services, Inc.*, 2017 WL 6501919, at *1 (S.D. Ill. Dec. 19, 2017) ("As a loan servicer, Great Lakes is responsible for managing borrowers' accounts, processing payments, assisting borrowers, and communicating with borrowers about repayment of their loans").

[9]  Of course, we are not at the stage of assessing damages, but I note that Saint-Ulysse provides no plausible factual support for his allegation that Great Lakes' purported breach caused him $5 million worth of damage. It would defy logic to accept that Saint-Ulysse had a loan agreement with Great Lakes that involved anything in the ballpark of such an extraordinary sum of money.

7

In order to plead a claim of fraud in the inducement, Saint-Ulysse must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Walid v. Yolanda for Irene Couture*, 425 N.J. Super. 171, 180 (App. Div. 2012) (quoting *Banco Popular North America v. Gandi*, 184 N.J. 161, 172–73 (N.J. 2005)); *see also Wilhelm Reuss GmbH & Co. KG, Lebensmittelwerk v. East Coast Warehouse & Distrib. Corp.*, 2018 WL 3122332 (D.N.J. June 26, 2018) (quoting *RNC Sys., Inc. v. Modern Tech Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012)). Reliance must be "justifiable" and "actual," and a "purchaser experienced in a business may not be justified in relying upon a misrepresentation … where he knows it is false or its falsity should be obvious to him." *Walid*, 425 N.J. Super. at 181.

As noted above, the contract itself is not identified. Saint-Ulysse's filings contain only one allegation that appears to involve a potential misrepresentation to Saint-Ulysse in connection with his student loans. Saint-Ulysse states, "Plaintiff intended for Defendants to use their own assets to fund the alleged loan." (Statement ¶ 17.) Saint-Ulysse does not allege any further facts to show how his own "intention" amounted to a misrepresentation by Great Lakes, who made the misrepresentation, when the misrepresentation was made and under what circumstances, or how he justifiably relied to his detriment on any misrepresentation regarding the source of the loan funds. This threadbare allegation that Great Lakes engaged in fraud does not meet the ordinary *Twombly/Iqbal* pleading standards, let alone the heightened pleading standard under Fed. R. Civ. P. 9(b) that requires plaintiffs to plead matters of fraud with particularity.

Absent specific allegations regarding the nature and content of a misrepresentation by Great Lakes and Saint-Ulysse's reliance thereon, his claim for fraud in the inducement must fail. Saint-Ulysse's claim for "Contract Fraud" will be dismissed.

### D. Breach of Fiduciary Duties

In his "More Definitive Statement," Saint-Ulysse explicitly asserts a claim for breach of fiduciary duties purportedly owed to him by Great Lakes.

To allege a claim of breach of fiduciary duty, a plaintiff must plead (i) the existence of a fiduciary relationship between the parties; (ii) a breach of the duty imposed by that relationship; and (iii) resulting damages. *Ware Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 18-13895, 2019 WL 1470129, at *5 (D.N.J. Apr. 3, 2019).

As an initial matter, Saint-Ulysse does not sufficiently allege the existence of a fiduciary relationship between himself and Great Lakes. In fact, it is well-settled law that "loan servicers generally do not owe a fiduciary duty to borrowers." *See Manetta v. Navient Corp.*, 2021 WL2886115, at *6 (D.N.J. July 8, 2021) (citing *Abulkhair v. Citibank & Assocs.*, 434 Fed. App'x 58, 63 (3d Cir. 2011) (noting that "creditor-debtor relationships rarely give rise to a fiduciary relationship"). Of course, Saint-Ulysse appears to allege that, despite its normal function as a loan servicer, Great Lakes was the actual lender of his student loan funds. This seems unlikely given the type of business Great Lakes is in (*see* n. 8, *supra*), but even if Great Lakes was his creditor, as Saint-Ulysse alleges, this still would not give rise to a fiduciary relationship. *See Galayda v. Wachovia Mortg. FSB*, 2010 WL 5392743, at *16 (D.N.J. Dec. 22, 2010) (noting that New Jersey courts have "universally embraced" the presumption "that there is no fiduciary duty between a borrower and a lender" and noting that it is "antithetical to the often adversarial and contentious nature of the borrower-lender relationship to impose a fiduciary duty on the lender").

As Saint-Ulysse is unable to plead facts sufficient to show that Great Lakes owed him any fiduciary duty, his claim of breach of fiduciary duties will be dismissed.

### E. Conversion

Saint-Ulysse describes one of his causes of action as "theft of funds." (Compl. at 5.) I construe this statement as a claim for conversion under New

9

Jersey common law. However, Saint-Ulysse does not plead facts sufficient to support such a claim.

"In New Jersey, conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Capital Health Sys. v. Veznedaroglu*, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017) (quoting *Ricketti v. Barry*, 2015 WL 1013547, at *8 (D.N.J. Mar. 9, 2015)). Common law conversion consists of the following elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Capital Health Sys.*, 2017 WL 751855, at *10. Conversion can be alleged over money if the plaintiff can point to, not just a legal claim for money, but a specific, segregated sum that defendant has wrongfully acquired. *Dougherty v. Drew Univ.*, 2021 WL 1422935, at *10 (D.N.J. Apr. 14, 2021). To state a conversion claim, the plaintiff must allege that he maintains the "right to immediate possession" of, as opposed to a mere claim to, the property. *First Nat. Bank of Bloomingdale v. N. Jersey Tr. Co., Ridgewood*, 14 A.2d 765, 767 (N.J. Sup. Ct. 1940).

Saint-Ulysse's conversion claim does not pertain to a "segregated sum [of money]" that defendant has wrongfully acquired. *See Dougherty*, 2021 WL 1422935, at *10. Rather, it involves a debt or promissory note, a financial instrument that underlies a legal claim for money. (Statement ¶ 4.) As a result, it is inappropriate to assert this claim as one for conversion.

Accordingly, Saint-Ulysse's conversion claim must fail. Saint-Ulysse's conversion claim will be dismissed.

### F. Wrongful Dishonor

Saint-Ulysse claims that Great Lakes committed "dishonor in commerce." (Compl. at 5.) This does not set forth a cognizable cause of action under New Jersey or federal law. I will liberally construe this claim as one for wrongful

10

dishonor under New Jersey's version of the Uniform Commercial Code. However, Saint-Ulysse's complaint fails to state such a claim.

N.J. Stat. Ann. §§ 12A:4–401 though 12A:4–407 address the relationship between a payor bank and its customer. N.J. Stat. Ann. § 12A:4–402a provides that "a payor bank wrongfully dishonors an item if it dishonors an item that is properly payable, but a bank may dishonor an item that would create an overdraft unless it has agreed to pay the overdraft."

Here, Saint-Ulysse has not alleged that Great Lakes is a bank subject to the relevant statute, nor has Saint-Ulysse provided factual allegations concerning what item Great Lakes dishonored or how it did so. Moreover, Saint-Ulysse has not set forth any explanation of how this purported act by Great Lakes resulted in $5 million or any other amount of damages.

Accordingly, Saint-Ulysse does not state a claim for wrongful dishonor under New Jersey law. Saint-Ulysse's wrongful dishonor claim will be dismissed.

### G. Conspiracy

Saint-Ulysse claims that the defendants engaged in "collusion." (Compl. at 5.) I construe this to indicate that Saint-Ulysse is asserting a civil conspiracy claim against Great Lakes and the individual defendants. Saint-Ulysses complaint fails to state a civil conspiracy claim.

New Jersey law defines a civil conspiracy as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 167 (2005) (internal quotation marks omitted) (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 348 (App. Div. 1993)).

Here, Saint-Ulysse does not allege 1) any agreement Great Lakes or the individual defendants had with one another or with an outsider, or 2) any unlawful activity in which they agreed to engage. Moreover, it is notable that

11

Saint-Ulysse alleges that the individual defendants are officers of Great Lakes. To the extent Saint-Ulysse is asserting that the individual defendants are Great Lake's co-conspirators, his conspiracy claim must fail for the additional reason that "a corporation can act only through its agents, thus the acts of corporate directors, officers, and employees on behalf of the corporation are the acts of the corporation and a corporation cannot conspire with itself." *Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 54 F.3d 1125, 1134 (3d Cir. 1995) (internal quotation omitted). Finally, a civil conspiracy must involve an agreement to commit some underlying tort or wrong. For the reasons expressed above, no such underlying wrong has been alleged.

Therefore, Saint-Ulysse's conspiracy claim fails not only because it is deficiently pleaded, but also on the legal grounds articulated by *Siegel Transfer*. Saint-Ulysse's civil conspiracy claim will be dismissed.

### H. Racketeering

Saint-Ulysse claims that the defendants engaged in "racketeering." (Compl. at 5.) I construe this to indicate that Saint-Ulysse is asserting a civil RICO claim under 18 U.S.C. § 1964. Saint-Ulysse's complaint fails to state a claim under the RICO Act.

Pursuant to § 1964, the federal RICO statute provides for recovery by any person injured in his or her business or property by reason of a violation of § 1962.[10] Given the nature of the action, Saint-Ulysse's RICO claim would logically involve a violation of § 1962(a), which provides that a person may not "use or invest . . . any part of income [derived from a pattern of racketeering activity or through collection of an unlawful debt], or the proceeds of such

---

[10] To the extent Saint-Ulysse separately asserts his "racketeering" claim under the New Jersey Racketeering Act—N.J.S.A. § 2C:41–1, *et seq.*—the result is the same. Because the New Jersey Racketeering Act was patterned after the federal RICO statute, and New Jersey courts rely on federal case law in construing the state racketeering statute, *Cetel v. Kerwan Fin. Group, Inc.*, 460 F.3d 494, 510 (3d Cir. 2006), there can be no other conclusion than that Saint-Ulysse's complaint fails to state a claim under the New Jersey statute as well.

12

income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," or § 1962(b), which provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." "Racketeering activity," as defined by the statute, refers to a number of criminal actions such as such as "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance," and a "pattern" of such activity is defined as "at least two acts of racketeering activity" occurring within a certain time period. §§ 1961(1), (5). A plaintiff bringing a civil action for damages suffered as a result of a defendant's RICO violation must make "a showing of injury" sufficient to prove "a concrete financial loss." *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015).

Here, Saint-Ulysse has not alleged any facts to support an inference that any of the defendants engaged in a predicate act of racketeering activity. The only allegation that appears to nod toward some form of criminal activity is his conclusory "theft of funds" claim, which I have already dismissed. *See* Section II.E., *supra*. Of course, since Saint-Ulysse has not alleged a single predicate act of "racketeering activity," it follows that he cannot establish that the defendants engaged in a "pattern of racketeering activity," which depends on, *inter alia*, two or more occurrences of such conduct.

Accordingly, Saint-Ulysse's complaint does not state a claim under RICO. Saint-Ulysse's racketeering claim will be dismissed.

### I. Intentional Infliction of Emotional Distress

Saint-Ulysse asserts "Emotional Distress" as one of the causes of action in his original complaint. As such, I will analyze his claim as one asserting the tort of intentional infliction of emotional distress under New Jersey common law.

To state a prima facie case for intentional infliction of emotional distress, a plaintiff must plausibly assert that: 1) the defendant acted either intentionally to do the act and to produce emotional distress or acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow"; 2) the defendant's conduct is so "extreme and outrageous … as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; 3) the defendant's intentional or reckless conduct proximately caused the plaintiff's emotional distress; and 4) the plaintiff suffered emotional distress that is "so severe that no reasonable [person] could be expected to endure it." *Juzwiak v. Doe*, 415 N.J. Super. 442, 451 (App. Div. 2010) (citing and quoting *Buckley v. Trenton Saving Fund Socy.*, 111 N.J. 355 (1988)).

Saint-Ulysse has not pleaded facts sufficient to support any of the elements of an intentional infliction of emotional distress claim. His allegations do not include any elaboration as to 1) Great Lakes' purported intent to cause him emotional distress, 2) how Great Lakes' conduct—specifically its accounting practices—was "extreme and outrageous," 3) how this conduct caused Saint-Ulysse's emotional distress, or 4) the severity of the harm.

Saint-Ulysse therefore fails to state a claim for intentional infliction of emotional distress. Saint-Ulysse's claim for intentional infliction of emotional distress will be dismissed.[11]

\* \* \*

---

[11] To the extent Saint-Ulysse may intend to assert a related claim for *negligent* infliction of emotional distress, his complaint fails to state a claim for the same reasons expressed here. Such a claim would similarly require Saint-Ulysse to plead that he suffered severe emotional injury of some sort, among other essential elements. Presenting no such factual support, Saint-Ulysse's allegations do not make out any tort claim for infliction of emotional distress, whether such injury was purportedly caused intentionally or negligently.

Saint-Ulysse does not plead facts sufficient to state a claim under any of the counts his complaint may reasonably allege. The complaint must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).[12]

## III.     MOTION FOR DEFAULT JUDGMENT

Saint-Ulysse moves for default judgment against the two individual defendants, Richard George and Hope Merry, pursuant to Fed. R. Civ. P. 55(b)(2). As discussed in Section II *supra*, however, Saint-Ulysse has failed to state a prima facie claim with respect to any of the counts he asserts in his complaint. As a result, I must deny Saint-Ulysse's motion for default judgment.

### A. Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default

---

[12] I note that Saint-Ulysse cites to a myriad of statutes and regulations in the documents he attaches to his complaint, some or all of which it appears he previously sent to Great Lakes to raise his "Billing Error Dispute." I do not construe the complaint as asserting any specific claims under this collection of statutes and regulations, but even if Saint-Ulysse were to assert claims under one or more of the provisions he cites, such claims would fail for reasons similar to those expressed here, *i.e.* they lack any factual support or they are inapplicable altogether. *See* 15 U.S.C. § 1666 *et seq.* (the Truth in Lending Act & Fair Credit Billing Act does not apply to Saint-Ulysse's student loans); 18 U.S.C. § 1342 (prohibits use of a "fictitious, false, or assumed title, name, or address" with respect to certain Postal Service activities"); 12 U.S.C. § 1831n(a)(2)(A) (requires banks insured by depository institutions to maintain uniform accounting principles consistent with GAAP and does not confer upon an individual a private right of action); 12 C.F.R. § 741.6(b) (applies only to credit unions); 15 U.S.C. § 1640(a)(1) and (3) (applies only to creditors); 15 U.S.C. § 1611(1) and (3) (applies only to creditors); 18 U.S.C. § 2071 (refers to the concealment, removal, or destruction of any records from any court of the United States or any public office).

judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### B. Analysis

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a). Here, the complaint was filed on August 6, 2021, and plaintiff has filed proof of service on Richard George and Hope Merry as of September 28, 2021.[13] (DE 6.) The individual defendants failed to answer or otherwise respond to the complaint the Clerk entered default on May 3, 2022 .

---

[13]   The executed affidavits of service (DE 6) state that a receptionist at Great Lakes accepted service for the individual defendants in their purported capacity as officers for the company. Great Lakes, however, has submitted an affidavit with exhibits to document that, by the time of filing and service of the complaint, there was no relationship between the corporate and individual defendants. (DE 30). That circumstance may explain the lack of any response from the individual defendants. I will assume for the sake of analysis, without making any finding on the point, that service was proper.

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

Consideration of the first factor, whether the individual defendants have a meritorious defense, immediately indicates that entry of a default judgment in inappropriate here. For the reasons provided in Section II, *supra*, it is clear that Saint-Ulysse's claims are legally flawed as they fail to state a cognizable claim with respect to any of the counts he advances. If the individual defendants were to participate in the case and move to dismiss Saint-Ulysse's complaint on the same grounds as Great Lakes did, they would similarly succeed in winning a dismissal.

Consideration of the other two factors is unnecessary here. The individual defendants have a meritorious defense that prevents me from entering a default judgment against them. Saint-Ulysse's motion for default judgment against the individual defendants will be denied.

## IV. CONCLUSION

For the reasons set forth above, Great Lakes' motion to dismiss is **GRANTED**, and Saint-Ulysse's motion for default judgment is **DENIED**.

An appropriate order follows.

Dated: December 16, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**