## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MARC HILAIRE SAINT-ULYSSE,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.; RICHARD GEORGE; and HOPE MERRY,**<br><br>    **Defendants.** | Civ. No. 21-14677 (KM) (JSA)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

*Pro se* plaintiff Marc Hilaire Saint-Ulysse filed this civil action against Great Lakes Educational Loan Services, Inc. ("Great Lakes") and two individuals previously affiliated with the company, Richard George and Hope Merry, asserting breach of contract and various other claims pertaining to student loans that were serviced by Great Lakes. On December 16, 2022, this Court dismissed Saint-Ulysse's original complaint, without prejudice, for failure to state a claim, and on January 17, 2023, Saint-Ulysse filed an amended complaint containing a single breach of contract count.

Now before the Court is Great Lakes' motion to dismiss Saint-Ulysse's amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons expressed below, Great Lakes' motion to dismiss is **GRANTED**.

### I. BACKGROUND

Saint-Ulysse initiated this action on August 6, 2021 using a form complaint titled "Complaint for a Civil Case Alleging Breach of Contract."

(DE 1.)[1] In a handwritten statement regarding a "billing error dispute," Saint-Ulysse alleged the following:

> The plaintiff, Marc H. Saint-Ulysse paid money in the form of a promissory note. Through lack of disclosures the plaintiff's promissory note was tendered for value. Under the agreement, the defendant, Great Lakes Educational Loan Services, Inc., was supposed to be the creditor in this alleged loan security instrument. The defendant failed to comply by showing true double entry accounting debits of the loss as a result of the issuance of the alleged loan to plaintiff, not providing the original wet ink signature of the promissory note, and prove they are the rightful holder of due course of my promissory note of this alleged loan. Perfection of a security interest is actual possession. If they are not in physical possession of the promissory note, they have no real claim to an alleged debt without the original note present for inspection.

---

[1]   Certain citations to record are abbreviated as follows:

"DE" = Docket entry number in this case

"Compl." = Saint-Ulsse's Complaint for a Civil Case Alleging Brach of Contract (DE 1)

"Statement" = Saint-Ulysse's "More Definitive Statement" (DE 38)

"MTD Op." = December 16, 2022 Opinion granting Great Lakes' motion to dismiss (DE 50)

"Am. Compl." = Saint-Ulysse's Amended Complaint (DE 52)

"Mot." = Brief in Support of Great Lakes Educational Loan Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (DE 53-1)

"Opp." = Saint-Ulysse's Objection to Defenant's Motion to Dismiss (DE 54)

"Reply" = Reply in Support of Great Lakes Educational Loan Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (DE 61)

"Sur Reply" = Saint-Ulysse's Response to Defendant's Reply Brief in Opposition of Motion (DE 65)

(DE 1 at 8.) In connection with this statement, Saint-Ulysse supplemented his apparent breach of contract claim with the following six "causes of action": 1) "dishonor in commerce," 2) "collusion," 3) "theft of funds," 4) "racketeering," 5) "failure to state a claim upon relief," and 6) "emotional distress." (*Id.* at 5.) On November 2, 2021, Great Lakes moved for the Court to dismiss Saint-Ulsse's complaint or alternatively direct Saint-Ulysse to file a more definitive statement of his complaint. (DE 12.) On March 29, 2022, the Court granted Great Lakes' motion as to the alternative relief sought and ordered Saint-Ulysse to file a more definitive statement of the Complaint by April 19, 2022. (DE 29.)

On April 19, 2022, Saint-Ulysse submitted a letter to the Court setting forth a "More Definitive Statement for [his] Complaint Alleging Breach of Contract." (DE 38.) In his "More Definitive Statement," Saint-Ulysse alleges that he previously notified Great Lakes of a billing error with respect to his Great Lakes student loan account, making reference to a document appended to his original complaint titled "Verified Student Loan Holder Billing Error Dispute." (Statement ¶ 3, 8.) Saint-Ulysse further alleges that he raised this dispute because "there was a possible violation of General[ly] Accepted Accounting Principles" ("GAAP") on the part of Great Lakes. (Statement ¶ 9.) According to Saint-Ulysse, Great Lakes violated GAAP by "refusing to credit his account because it should reflect a bank asset and liability . . . not a debt," and Great Lakes "failed to comply by showing true double entry accounting debits of the loss as a result of the issuance of the alleged loan to plaintiff . . ." (*Id.*; Compl. at 8.) This alleged violation of GAAP also appears to involve Saint-Ulysse's understanding that Great Lakes, not the federal government, was going to serve as the creditor providing the funds for his student loans, and his allegation that Great Lakes tendered his promissory note for value (as evidenced, according to Saint-Ulysse, by Great Lakes' failure to present him with a wet ink signature of the note for inspection). (Statement ¶¶ 4, 5, 6, 16, 17, 21.) In his "More Definitive Statement," Saint-Ulysse alleged two additional causes of action that were not enumerated in his original complaint: 1) breach of fiduciary duties, and 2) "contract fraud." (*Id.* ¶¶ 19, 27.) On May 10, 2022,

Great Lakes moved to dismiss Saint-Ulysse's "More Definitive Statement" of the complaint, *inter alia*, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (DE 40.) On December 16, 2022, I granted Great Lakes' motion and dismissed Saint-Ulysse's complaint "without prejudice to the submission, within 30 days, of a proposed amended complaint that remedies the deficiencies noted in the accompanying opinion." (DE 51.)

On January 17, 2023, Saint-Ulysse filed the currently operative pleading in this action, in which he asserts a single cause of action for breach of contract. (Am. Compl. ¶¶ 12-16.) In his amended complaint, Saint-Ulysse narrates the same sequence of events that was featured in his original complaint and in his "More Definitive Statement." Saint-Ulysse alleges that "[o]n approximately September 5, 2013, Defendants Great Lakes emailed Plaintiff stating that they were assigned as a servicer for the alleged loans," at which time Saint-Ulysse began to make payments toward the debt. (*Id.* ¶¶ 6-7.) Saint-Ulysse then realleges that "[o]n approximately April 2, 2020, Plaintiff mailed defendants an Affidavit of Verified Billing Error Dispute," contesting the accuracy of the monthly statements he had been receiving, and asserting that Defendants violated GAAP given their "failure to credit Plaintiff's account for credits received." (*Id.* ¶¶ 8-9.) According to Saint-Ulysse, "Defendants never verified the creditor of the alleged loan they were serving," and therefore "cannot prove existence of the loan." (*Id.* ¶¶ 11-12.) Whereas Saint-Ulysse states that he "fully performed the contract by advance payment in full through his credit-signature being accepted for value," Defendants allegedly breached a contract with Saint-Ulysse by "fail[ing] to deliver through the Billing Error Dispute," which Saint-Ulysse suggests had a negative impact on his credit report. (*Id.* ¶¶ 13-14.) "As a proximate result of Defendants' breach," Saint-Ulysse claims he "suffered substantial money damages . . . in excess of $1,500,000." (*Id.* ¶¶ 1, 16.)

On January 27, 2023, Great Lakes filed a motion to dismiss the amended complaint for failure to state a claim. (DE 53.) On February 1, 2023,

Saint-Ulysse filed an opposition to Great Lakes' motion. (DE 54.) On February 14, 2023, Great Lakes filed a reply brief, and on February 15, 2023, Saint-Ulysse filed a sur reply. Great Lakes' motion is fully briefed and ripe for decision.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.   DISCUSSION

### A.   Breach of Contract

Saint-Ulysse alleges that Great Lakes and the individual defendants are liable for money damages resulting from a breach of contract. However, Saint-Ulysse does not plead facts sufficient to support such a claim.

To establish a breach of contract claim, a claimant must show (1) "that the parties entered into a valid contract"; (2) "that the defendant failed to perform [its] obligations under the contract"; and (3) "that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J.Super. 245, 920 A.2d 678, 689 (App. Div. 2007).[2] "A contract exists when there was a meeting

---

[2]     "[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir.2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). New Jersey uses the most-significant-

of the minds, there was an offer and acceptance, there was consideration, and there was certainty in the terms of the agreement." *See Allen-White v. Bloomingdale's, Inc.*, 225 F. Supp. 3d 254, 258 (D.N.J. 2016). A so-called meeting of the minds "occurs when there has been a common understanding and mutual assent of all the terms of a contract." *See Knight v. New Eng. Mut. Life Ins. Co.*, 220 N.J. Super. 560 (App. Div. 1987).

Once again, Saint-Ulysse has not pleaded any of the required elements of a breach of contract claim. In his amended complaint, Saint-Ulysse appears to concede at last, contrary to the allegations in his previous pleadings, that Great Lakes was not a creditor in any loan agreement into which he entered.[3] (Am. Compl. ¶ 6) That said, Saint-Ulysse still has not plausibly alleged any agreement between himself and Great Lakes or the individual defendants.

---

relationship test, which consists of two prongs. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F.Supp.2d 696, 704 (D.N.J.2011), *aff'd*, 709 F.3d 202 (3d Cir.2013). First, the court must determine whether a conflict actually exists between the potentially applicable laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008) ("Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them.") (internal quotations omitted). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 717 (D.N.J. 2011) (quoting *P.V.*, 197 N.J. at 143). If a conflict exists, the court then moves to the second prong: it must determine "which state has the 'most significant relationship' to the claim at issue by weighing the factors" in the applicable section of the Restatement (Second) of Conflict of Laws. *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102 (1993). The parties seem to agree that New Jersey law applies in this diversity action. At any rate, they point to no aspect in which the application of non-forum law would change the result. Having been directed to no applicable conflict, I apply general principles of New Jersey contract law.

[3]   Great Lakes is not itself a lender, but is a student loan servicing company. *See, e.g., Lawson-Ross v. Great Lakes Higher Education Corporation*, 955 F.3d 908, 914 (11th Cir. 2020) ("As a federal student loan servicer, Great Lakes was responsible for collecting payments from borrowers, providing borrowers with repayment options, managing borrowers' student loan accounts, and communicating with borrowers about their loans"); *Nelson v. Great Lakes Educational Loan Services, Inc.*, 2017 WL 6501919, at *1 (S.D. Ill. Dec. 19, 2017) ("As a loan servicer, Great Lakes is responsible for managing borrowers' accounts, processing payments, assisting borrowers, and communicating with borrowers about repayment of their loans").

Saint-Ulysse has not provided the Court with a copy of any underlying agreement, nor has he even described the terms of any purported agreement he had with the Defendants. Saint-Ulysse makes vague assertions that Defendants failed to "verif[y] the creditor of the alleged loan they were serving [sic]," failed to "prove existence of the loan through verification of debt by the alleged lender," and failed to "post as additional credits to [his] account . . . additional payments, interest, and other finance fees." (Am. Compl. ¶¶ 10-12.) But Saint-Ulysse provides no factual detail regarding what agreement, let alone what specific terms of that agreement, is the source of these purported obligations. Without presenting the contract or at least alleging its terms, Saint-Ulysse is unable to plausibly allege that a contract existed. *A fortiori,* he provides no factual basis for his allegations that such a hypothetical contract was breached.[4]

Without alleging any terms of an agreement or any reasonable explanation of how those terms were violated and how such violation caused him damage, Saint-Ulysse's lone breach of contract claim must fail. The amended complaint therefore must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Dismissal With Prejudice

Where a complaint is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added); *accord Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). This is not an initial dismissal, and it appears without question that further attempts to amend would be futile.

---

[4]     As I noted in my previous Opinion (*see* MTD Op. n. 9), though we are not at the stage of assessing damages, Saint-Ulysse provides no factual support for his allegation that Great Lake's purported breach caused him the amount of damages he claims. Though Saint-Ulysse significantly reduced the size of the damages award he seeks—$1.5 million, down from $5 million—it is simply implausible that Saint-Ulysse would have entered into an agreement with Great Lakes or anyone else regarding servicing student loans that would have involved such an extraordinary sum of money.

Saint-Ulysse initiated this action on August 6, 2021 by filing his initial pleading, in which he alleged at least seven causes of action, including breach of contract. (DE 1.) On March 29, 2022, I found that these causes of action were inadequately pleaded, but rather than dismiss it, I granted Saint-Ulysse the opportunity to file a more definitive statement of his complaint. (DE 29.) On April 19, 2022, Saint-Ulysse filed a second version of his original complaint, expanding on the allegations set forth in his original complaint and asserting two additional causes of action. (DE 38.) On December 16, 2022, construing the complaint and submissions liberally, I granted the motion of Great Lakes to dismiss, but without prejudice to the submission of a further amended complaint to remedy the deficiencies noted in my accompanying opinion. (DE 51.) On January 17, 2023 Saint-Ulysse filed his third pleading, *i.e.,* the amended complaint that is the subject of this opinion. (DE 52.) For all the reasons provided herein, Saint-Ulysse's amended complaint does not cure the deficiencies in those prior pleadings; in many respects it repeats or amplifies them. In addition, although not required to do so, I have considered and rejected still further purported claims that Saint-Ulysse included in his briefing in opposition to this motion to dismiss.[5]

---

[5]     To be clear, I do not construe Saint-Ulysse to have asserted any cause of action other than the breach of contract claim under Count One. Though Saint-Ulysse makes brief mention of such legislation as the Truth in Lending Act and the Fair Credit Billing Act, he has not set forth any specific claim thereunder. And even if Saint-Ulysse were to assert claims under these statutes, such claims would fail for reasons similar to those expressed here, *i.e.,* they lack any factual support or they are inapplicable altogether. *See* 15 U.S.C. § 1666 *et seq.* (the Truth in Lending Act & Fair Credit Billing Act does not apply to student loans).

I do not construe Saint-Ulysse to have asserted a claim under the Fair Debt Collection Practices Act (the "FDCPA"), a federal law he references for the first time in his opposition brief. (Opp. at 2.) "There are two elements in a claim for violation of the FDCPA: '(1) the defendant is a 'debt collector,' and (2) the defendant debt collector engaged in prohibited practices in an attempt to collect a debt.'" *Andreotti v. Ocwen*, 2016 WL 236213, at *2 (D. N.J. Jan. 19, 2016) (quoting *Ciccone v. World Sav. Bank, F.S.B.*, 2013 WL 2146912, at *41 (D. N.J. May 15, 2013)). As Great Lakes correctly points out, "[n]ot only has Plaintiff not alleged that Great Lakes principally engages in the collection of debts, or even that Great Lakes regularly collects or attempts to

Because Saint-Ulysse has been given multiple opportunities to amend, and because it is clear that he has exhausted such facts as he possesses and amendment therefore would be futile, this dismissal will be entered with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the motion of Great Lakes to dismiss the complaint is **GRANTED**.

An appropriate order follows.

Dated: July 14, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

---

collect debts, courts have consistently held that Great Lakes is not a "debt collector" for purposes of the FDCPA." Reply at 7-8 (citing *Weber v. Great Lakes Educational Loan Services, Inc.*, 2014 WL 1683299, at *7 (W.D. Wisc. Apr. 29, 2014) (holding that "Great Lakes is not a 'debt collector' for FDCPA purposes" and granting summary judgment in its favor); *Lewis v. Great Lakes Educational Loan Services*, 2023 WL 1861152, at *2 (W.D. Wisc. Feb. 9, 2023) (noting that "[a] student loan servicer that acquires the plaintiff's debt before the plaintiff's default is not a debt collector under the FDCPA" and dismissing plaintiff's complaint against Great Lakes)).

Finally, I do not construe Saint-Ulysse to have asserted a claim for breach of fiduciary duty, despite his suggestion in his sur reply that Great Lakes could not "fulfill their fiduciary obligations and verify the loan they are servicing." (Sur Reply at 1.) Even if Saint-Ulysse did bring such a claim, the allegations in his operative pleading do not cure the deficiencies I noted when I dismissed the breach of fiduciary duty claim he asserted in his original complaint. (MTD Op. at 9.)